UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| APPLERA CORPORATION, ) | |
| ) | |
| Plaintiff, ) | CASE NO. 07-CA-10547-GAO |
| ) | |
| v. ) | |
| ) | |
| MICHIGAN DIAGNOSTICS, LLC, ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF APPLERA CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

Plaintiff Applera Corporation, acting by and through its division Applied Biosystems Group (hereinafter "Applied Biosystems" or "AB"), submits this memorandum in support of its motion for leave to amend and to file its Second Amended Complaint ("SAC") (proposed SAC attached as Exhibit A).

### INTRODUCTION

AB proposes to amend its complaint by adding new infringement claims concerning five patents and by adding one new defendant, Brij P. Giri ("Giri"), the co-founder and co-owner of defendant Michigan Diagnostics, LLC ("Michigan Diagnostics").

The Federal Rules provide explicitly that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Justice requires granting AB leave to amend in this case, and no grounds exist for departing from this liberal amendment policy. The Court's deadline for seeking leave to amend has not yet passed. The case remains in the early stages of discovery. All but one of the patents addressed by the proposed SAC are among those Michigan

Diagnostics already seeks to add to the case through its counterclaims.[1] And because Giri has been actively involved in the litigation to date as principal of Michigan Diagnostics, he will not suffer any undue prejudice from being brought into the case as a party at this point. Accordingly, AB respectfully requests that the Court grant leave to amend its complaint and to file the SAC.

## FACTUAL BACKGROUND

### The Parties

Plaintiff Applied Biosystems is a division of Applera Corporation, a Delaware corporation. It is the successor to a company called Tropix, Inc., which conducted business in the area of medical diagnostics and related fields based on novel chemiluminescent compounds, particularly certain triggerable dioxetanes. The company's inventions in the field of dioxetane chemistry are the subject of both United States and international patents.

Defendant Michigan Diagnostics is a Michigan limited liability company. It purports to be in the business of manufacturing, selling, and distributing chemiluminescent chemicals. Proposed defendant Giri has been a co-founder, member, and fifty-percent co-owner of Michigan Diagnostics since its founding. See SAC ¶ 4. Giri also has been responsible for all of Michigan Diagnostics' research and development activities. Id.

---

[1] AB acknowledges that a case or controversy exists between the parties as to the five patents it seeks to add to the case through the SAC. Accordingly, AB withdraws its motion to dismiss Michigan Diagnostics' counterclaims for lack of subject matter jurisdiction to the extent of the patents addressed in the SAC. AB does not withdraw its jurisdictional argument as to any other patents, and it does not withdraw any of its arguments for dismissal under Rule 12(b)(6) for failure to state a claim and for dismissal of Michigan Diagnostics' fraud claims under Rule 9(b) for failure to plead with particularity.

**Relevant Procedural History**

<u>Initial Complaints and Venue Motions</u>

On March 26, 2007, AB commenced a civil action against Michigan Diagnostics in the District of Massachusetts (the "Massachusetts Action"). AB's complaint (the "Initial Complaint") alleged that Michigan Diagnostics had directly or indirectly infringed, in violation of 35 U.S.C. § 271, two of its patents—U.S. Patent No. 6,514,717B2 ("the '717 Patent") and U.S. Patent No. 6,322,727B1 ("the '727 Patent"). On April 5, 2007, prior to service of the Initial Complaint, AB filed an amended complaint (the "First Amended Complaint" or "FAC") alleging that Michigan Diagnostics infringed a third patent, U.S. Patent No. 6,107,024 ("the '024 Patent"). On July 16, 2007, AB formally served the FAC on Michigan Diagnostics.

On May 15, 2007, Michigan Diagnostics responded to AB's infringement action by commencing a parallel declaratory judgment action in the U.S. District Court for the Eastern District of Michigan (the "Michigan Action"). Among other things, Michigan Diagnostics requested that the court declare invalid and unenforceable <u>62 patents</u> owned by AB, including the three that had been asserted by AB in the Massachusetts Action. Michigan Diagnostics formally served its declaratory judgment complaint on AB on July 19, 2007.

On August 3, 2007, Michigan Diagnostics filed a motion to dismiss the Massachusetts Action for improper venue or, in the alternative, to transfer the action to the Eastern District of Michigan. On August 8, 2007, AB filed a motion to dismiss the Michigan Action or, in the alternative, to transfer it to this Court. On October 25, 2007, this Court held a hearing on Michigan Diagnostics' motion to dismiss the Massachusetts Action or transfer it to Michigan. On November 16, 2007, Judge Edmunds of the U.S. District Court for the Eastern District of Michigan transferred the Michigan Action to this Court. On December 11, 2007, this Court

denied Michigan Diagnostics' motion. The ultimate result of these dueling venue motions was that both cases were pending before this Court.

### AB's Motion to Dismiss the Michigan Action

On December 13, 2007, AB filed a motion to dismiss the Michigan Action for lack of subject matter jurisdiction, failure to state a claim, and pursuant to this Court's discretion under the Declaratory Judgment Act.

Michigan Diagnostics did not ever file an opposition to the motion to dismiss the Michigan Action. Instead, on January 26, 2008, two days prior to the Court's initial scheduling conference, and without seeking this Court's leave, Michigan Diagnostics filed a "response" to AB's motion to dismiss. Michigan Diagnostics' stated in this filing that it had chosen not to oppose the motion to dismiss "because of the duplication between [its] counterclaims and [its] declaratory judgment action." Michigan Diagnostics also stated that its "course of action best promotes judicial economy and the interests of the Court since the allegations in the declaratory action are the same as the counterclaims...."

The Court ultimately dismissed the Michigan Action without prejudice, thereby requiring the parties to litigate their respective claims and defenses in the context of the pending Massachusetts Action.

### Michigan Diagnostics' Answer and Counterclaims

On January 7, 2008, Michigan Diagnostics answered the FAC. In addition to answering AB's allegations of infringement as to the '717, '727, and '024 Patents, Michigan Diagnostics asserted several counterclaims against AB. Michigan Diagnostics' counterclaims largely duplicated the claims made in its declaratory judgment complaint in the Michigan Action, including the claim to declare invalid and unenforceable 62 of AB's patents.

Initial Scheduling Conference

On January 28, 2008, the Court conducted its initial scheduling conference. The scheduling order entered by the Court includes a July 1, 2008 deadline for filing any motions for leave to amend pleadings.

AB's Motion to Dismiss Michigan Diagnostics' Counterclaims

On January 28, 2008, AB filed a motion to dismiss Michigan Diagnostics' counterclaims for lack of subject matter jurisdiction, failure to state a claim, and pursuant to the Court's discretion under the Declaratory Judgment Act (Doc. Nos. 28-29). AB's motion to dismiss advanced essentially the same arguments it had made previously in connection with the declaratory judgment action, which Michigan Diagnostics did not ever oppose.

During the scheduling conference held by the Court later in the day on January 28, 2008, counsel for Michigan Diagnostics requested that the Court stay any decision on AB's motion to dismiss in light of the discovery requests he had served on counsel for AB a few minutes before the scheduling conference. The Court declined to order a stay and invited counsel for Michigan Diagnostics to address the issue, if he wished, in Michigan Diagnostics' opposition to the motion to dismiss.

On February 8, 2008, Michigan Diagnostics filed its opposition to AB's motion to dismiss (Doc. No. 32). Nowhere in its opposition did Michigan Diagnostics request the Court to stay a decision on the motion pending AB's response to discovery requests. Nevertheless, on March 13, 2008, without seeking this Court's leave, Michigan Diagnostics filed a further response to AB's motion to dismiss, which asked this Court to stay its decision on the motion to dismiss pending AB's responses to Michigan Diagnostics' interrogatories, which were due the following day (Doc. No. 34).

AB's motion to dismiss remains pending and is set for hearing on June 25, 2008, together with several other pending motions.

Discovery and Other Matters

On January 28, 2008, a few minutes prior to the scheduling conference, counsel for Michigan Diagnostics served AB with discovery requests, including document requests, interrogatories, and requests for admissions. AB served its written responses and objections to all of these discovery requests in a timely fashion.

On February 6, 2008, AB served its first set of document requests on Michigan Diagnostics. On March 7, 2008, Michigan Diagnostics served its responses and objections to AB's document requests in a timely fashion. Michigan Diagnostics' responses, however, disclosed that it would only produce documents in response to two of the seventy-two requests and would withhold large categories of documents based only on generalized objections of relevance and burden. On April 1, 2008, after several attempts to confer with counsel for Michigan Diagnostics and a failed effort to broker a reasonable compromise, AB filed a motion to compel Michigan Diagnostics' production of documents (Doc. Nos. 36-37). That motion to compel is pending and set for hearing on June 25, 2008.

On April 23, 2008, Michigan Diagnostics filed a motion to disqualify all of AB's attorneys from the case (Doc. No. 39). Michigan Diagnostics' counsel repeatedly refused to confer with AB's counsel about the basis for the motion to disqualify before it was filed. In support of its motion to disqualify, Michigan Diagnostics asserted, among other things, that "the litigation is in its infancy." Amended Memorandum in Support of Motion to Disqualify (Doc. No. 41), at 6.

On April 24, 2008, Michigan Diagnostics filed an "emergency" motion to stay the case and, in particular, the deposition of Howard Toben (which had been noticed two weeks previously), in light of the motion to disqualify filed the day before (Doc. No. 42). In support of its motion to stay, Michigan Diagnostics asserted, among other things, that: "This case is still in the beginning stages of discovery." AB filed an opposition to the motion to stay on April 28, 2008 (Doc. No. 45). That same day, without seeking leave to do so, Michigan Diagnostics filed a "reply" to AB's opposition to the motion to stay (Doc. No. 46). The Court denied Michigan Diagnostics' motion to stay on April 28, 2008.

On April 29, 2008, AB's counsel took Toben's deposition. During the deposition, counsel for Michigan Diagnostics, Mr. Weintraub, instructed Toben not to answer, on grounds of relevance, several times. Although Mr. Weintraub backed off from some of these objections and "allowed" questioning subject to the protective order, he persisted in refusing to allow Toben to answer questions concerning Michigan Diagnostics bank account records and sources of financing for its infringing activities.

On May 30, 2008, Michigan Diagnostics produced approximately 129 pages of sales records. Although the records were designated "Highly Confidential" under the protective order, Michigan Diagnostics redacted virtually all customer-identifying information from the documents. Michigan Diagnostics also redacted all information it claims related to non-dioxetane products and altered the sales records, by hand, by circling the figures it contends are relevant and, in one case, by recalculating the invoice total and writing the new figure on the document.[2]

---

[2] The conduct of the Toben deposition, and Michigan Diagnsotics' redaction and alteration of the sales records produced on May 30, 2008, will be the subject of a separate motion to compel.

7

On June 9, 2008, Michigan Diagnostics withdrew its motion to disqualify (Doc. No. 63). According to its notice of withdrawal and a Giri affidavit filed in support, Michigan Diagnostics withdrew the motion to disqualify because "certain facts ha[d] come to light" and Giri "now believe[d] that [he] was mistaken and [his] recollection was incorrect." On June 10, 2008, AB filed a motion for payments of the costs and attorney's fees that it had been forced to incur as a result of the withdrawn motion to disqualify (Doc. No. 64).

**Proposed Second Amended Complaint**

The SAC contains new infringement allegations and claims pertaining to five patents, none of which is expired: Unites States Patents 5,145,772 ("the '772 patent"), 5,707,559 ("the '559 patent"), 5,891,626 ("the '626 patent"), 5,605,795 ("the '795 patent"), and 6,555,698 ("the '698 patent"). See SAC ¶¶ 11-15, 40-69. All but one of these five patents – the '698 patent – are among the 62 patents that Michigan Diagnostics has asked the Court to declare invalid and unenforceable. All five of these patents, like the three previously asserted by AB, "relate to, among other things, medical diagnostics and research, including methods, substrates and kits used for detecting a first substance in a sample through generation of light (chemiluminescence) by activating and decomposing stabilized 1,2-dioxetanes." Id. at ¶ 16. The relief sought by AB for defendants' infringement of these five patents includes damages and injunctive relief. Id. at ¶¶ 43-44, 49-50, 55-56, 61-62, and 67-68.

The SAC also names a new defendant, Giri, and contains allegations concerning his personal role and personal liability for both direct and indirect infringement of the patents in suit. Specifically, the SAC alleges that Giri has "personally, actively, and knowingly participated in, sanctioned, and directed activities that infringe the patents in suit." Id. at ¶ 19. Giri also has "personally and actively participated in, sanctioned, and directed activities that he knew would

8

induce others, including but not limited to Michigan Diagnostics, to infringe the patents in suit." Id.

The SAC also contains veil-piercing allegations, pursuant to which AB alleges Giri will be held liable for direct and indirect infringement by Michigan Diagnostics. The SAC alleges that "Michigan Diagnostics, on information and belief, is a sham company and an alter ego and mere instrumentality of Giri." Id. at ¶ 20. "Giri, on information and belief, has controlled Michigan Diagnostics' activities since its founding and has used Michigan Diagnostics to infringe the patents in suit." Id. at ¶ 21. In addition, Giri has "ignored the corporate form of Michigan Diagnostics, failed to maintain Michigan Diagnostics' good standing, and continued to do business through Michigan Diagnostics even when Michigan Diagnostics was not in good standing." Id. at ¶ 22. Moreover, the SAC alleges that Michigan Diagnostics "has shared facilities and employees with other companies, including companies affiliated with Giri and his co-owner, Howard Toben," id. at ¶ 23, and "does not maintain, and has never maintained, proper books and records and does not have sufficient corporate assets to conduct its business and fulfill its obligations," id. at ¶ 24.

## ARGUMENT

The Court should grant leave to amend and allow AB to file the proposed SAC. Rule 15(a)(2) states that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The First Circuit has consistently followed a "liberal amendment policy" under which amendment is allowed unless the party opposing amendment can establish "undue delay, bad faith, dilatory motive of the requesting party, repeated failure to cure deficiencies, [or] futility of amendment." U.S. ex. rel. Rost v. Pfizer, Inc., 507 F.3d 720, 733-34 (1st Cir. 2007) (citing Forman v. Davis, 371 U.S. 178, 182 (1962)). In addition, "[c]ourts have freely granted leave to amend complaints to introduce both new and additional patents." New Balance Athletic

Shoe, Inc. v. Puma USA, Inc., 118 F.R.D. 17, 20 (D. Mass. 1987) (Alexander, M.J.); Jenn Air Prods. Co. v. Penn Ventilator, Inc., 283 F Supp 591, 594 (D. Pa. 1968) (granting leave to amend to add patents because trial was distant, discovery had just begun, and the newly added patents were related to the previously included patents). Justice requires granting AB leave to amend in this case, and none of the recognized grounds for departing from the liberal amendment policy is present.

First, AB has not unduly delayed seeking leave to amend. The Court's deadline for seeking leave to amend – July 1, 2008 – has not yet passed. The case is still in the beginning stages of discovery, as Michigan Diagnostics has stated to this Court in trying to stay the case and disqualify all of AB's lawyers. Only one deposition has been conducted to date; Michigan Diagnostics has produced very few documents; and the Court has before it several motions which likely will clarify the scope and conduct of the case going forward.

Second, AB's amendment is proposed in good faith, the defendants have no futility argument, and the defendants will not suffer any undue prejudice. AB does not expect this amendment to delay the progress of this case at all or to greatly expand the scope of this litigation. Indeed, all but one of the patents addressed by AB's proposed claims are among those defendant Michigan Diagnostics, LLC is already seeking to add to the case through its counterclaims. In connection with its attempts to establish subject matter jurisdiction and to expand the case to include 62 patents, Michigan Diagnostics has already asserted that it is engaging in "arguably infringing" and "arguably illegal" activities as to these patents, among others. See Michigan Diagnostics' Opposition to Motion to Dismiss (Doc. No. 32) at 7-8.[3]

---

[3] As noted above, AB acknowledges that this proposed amendment gives rise to a case or controversy (and thus subject matter jurisdiction) as to the patents being added. Accordingly, AB withdraws its jurisdictional arguments for dismissal to the extent of these patents.

10

Michigan Diagnostics has no conceivable basis for objecting to an amended complaint that contains infringement allegations as to patents <u>it wants</u> to include in the case. As to the '698 patent, which was not addressed by Michigan Diagnostics' counterclaims, its inclusion in the case will not significantly expand the scope of discovery, cause delay in the case, or otherwise unduly prejudice defendants.

As to Giri, recent discovery and analysis by AB have made clear the extent of his control over Michigan Diagnostics and its activities, his disregard for Michigan Diagnostics' corporate form and existence, and his direct participation in and liability for infringing activities. Giri is individually liable for directly infringing AB's patents and for actively inducing infringement of AB's patents by others, including Michigan Diagnostics. <u>See, e.g., Hoover Group, Inc. v. Custom Metalcraft, Inc.</u>, 84 F.3d 1408, 1411-12 (Fed. Cir. 1996); <u>Orthokinetics, Inc. v. Safety Travel Chairs, Inc.</u>, 806 F.2d 1565, 1579 (Fed. Cir. 1986) ("The cases are legion in which courts have recognized and imposed personal liability on corporate officers for participating in, inducing, and approving acts of patent infringement.") (citations omitted). In addition, because Michigan Diagnostics is Giri's alter ego and mere instrumentality, AB is entitled to pierce the corporate veil to hold Giri liable for all of Michigan Diagnostics' acts of infringement. <u>See, e.g., Hoover Group</u>, 84 F.3d at 1411-12. Justice requires allowing AB to add Giri as a defendant because, as the key figure at Michigan Diagnostics and the key actor in the infringement of AB's patents, Giri must be held liable for the damages caused by his infringement to date. Equally important, Giri must be enjoined from engaging in future infringement of the patents in suit, either through Michigan Diagnostics, on his own, or through some other entity under his control.

Third, AB has not repeatedly failed to cure deficiencies in its prior complaints. In fact, AB is submitting the SAC to add new claims and a new defendant, not to cure any prior pleading deficiencies.

In short, justice requires permitting AB to amend its complaint, and no grounds exist for the Court to depart from the well-established rule that leave to amend should be freely granted.

## CONCLUSION

For the foregoing reasons, Applied Biosystems respectfully requests that the Court grant it leave to amend and to file the Second Amended Complaint.

Respectfully submitted,

APPLERA CORPORATION

By its attorneys,

/s/ Adam B. Ziegler
T. Christopher Donnelly (BBO # 129930)
Adam B. Ziegler (BBO # 654244)
Donnelly, Conroy & Gelhaar, LLP
One Beacon Street, 33rd Floor
Boston, MA 02108
(617) 720-2880

Of Counsel:
Steven B. Kelber
Jagtiani & Guttag
10363-A Democracy Lane
Fairfax, VA 22030
(703) 591-2664

Dated: June 18, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2008, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to Defendant's counsel.

/s/ Adam B. Ziegler